IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHERYL SCHWARZWAELDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 12-1174 |
| ) | Judge Terrence F. McVerry |
| CAROLYN W. COLVIN, ACTING ) | Magistrate Judge Lisa Pupo Lenihan |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

**I.  Recomendation**

Plaintiff Cheryl Schwarzwaelder ("Schwarzwaelder") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act ("Act") [42 U.S.C. §§ 401-433]. The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. ECF Nos. 11, 15 & 21. For the reasons that follow, it is respectfully recommended that Schwarzwaelder's motion for summary judgment (*ECF Nos. 11 & 15*) be denied, that the Commissioner's motion for summary judgment (*ECF No. 21*) be granted, and that the Commissioner's decision be affirmed.

**II.  Report**

   **A.  Procedural History**

Schwarzwaelder protectively applied for disability insurance benefits on March 10, 2009, alleging that she had become "disabled" on March 31, 2004. R. at 106, 125. Pennsylvania's

1

Bureau of Disability Determination ("Bureau") denied the application on May 11, 2009. R. at 69. Schwarzwaelder responded on July 3, 2009, by filing a timely request for an administrative hearing. R. at 21. On September 8, 2010, a hearing was held in Seven Fields, Pennsylvania, before Administrative Law Judge ("ALJ") Brian W. Wood. R. at 39. Schwarzwaelder, who was represented by counsel, appeared and testified at the hearing. R. at 42-61. Dr. William Houston Reed, an impartial vocational expert, also testified at the hearing. R. at 61-65. In a decision dated October 13, 2010, the ALJ determined that Schwarzwaelder was not "disabled" within the meaning of the Act. R. at 18-31.

On December 10, 2010, Schwarzwaelder sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. R. at 16-17. The Appeals Council denied the request for review on June 18, 2012, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. R. at 1. Schwarzwaelder commenced this action on August 15, 2012, seeking judicial review of the Commissioner's decision. ECF No. 1. Schwarzwaelder and the Commissioner filed motions for summary judgment on December 20, 2012,[1] and February 27, 2013, respectively. ECF Nos. 11, 15 & 21. These motions are the subject of this report and recommendation, which is being filed pursuant to 28 U.S.C. § 636(b)(1)(C).

B.  **Standard of Review**

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46

---

[1] The motion filed by Schwarzwaelder on December 20, 2012, contained redactions. ECF No. 11. An unredacted motion was filed under seal the next day. ECF No. 15.

(3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject

to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

### C. The ALJ's Decision

In his decision, the ALJ determined that Schwarzwaelder had not engaged in substantial gainful activity subsequent to her alleged onset date. R. at 23. Schwarzwaelder was found to be suffering from a mood disorder, an anxiety disorder, and post-traumatic stress disorder. R. at 23. These impairments were deemed to be "severe" under the Commissioner's regulations. R. at 23; 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c). The ALJ concluded that Schwarzwaelder's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 23-25.

5

In accordance with 20 C.F.R. § 404.1545, the ALJ assessed Schwarzwaelder's "residual functional capacity"[2] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is able to perform simple, routine, repetitive tasks. She requires low-stress work defined as occasional simple decision-making and occasional changes in the work setting. She can have occasional interaction with coworkers and supervisors, and occasional interaction with the public.

R. at 25. Schwarzwaelder had "past relevant work"[3] experience as a financial consultant for two different companies. R. at 62. Dr. Reed classified those positions as "highly skilled"[4] jobs at the "sedentary"[5] to "light"[6] levels of exertion. R. at 62. Since Schwarzwaelder was deemed to be capable of performing only "unskilled"[7] tasks, it was determined that she could not return to her past relevant work. R. at 30, 62-63.

---

[2] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[3] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[4] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§ 404.1568(c), 416.968(c).

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[7] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or

Schwarzwaelder was born on July 7, 1958, making her forty-five years old on her alleged onset date and fifty-two years old on the date of the ALJ's decision. R. at 30, 43. During the relevant period of time, she was initially classified as a "younger person" under the Commissioner's regulations.[8] 20 C.F.R. § 404.1563(c). She became a "[p]erson closely approaching advanced age" on July 7, 2008, when she reached the age of fifty. 20 C.F.R. § 404.1563(d). She had a college education and an ability to communicate in English. R. at 44, 137; 20 C.F.R. § 404.1564(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Schwarzwaelder could work as a security guard, housekeeper/cleaner or janitor/cleaner. R. at 31. Dr. Reed's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A).[9] R. at 63.

**D. Discussion**

Schwarzwaelder obtained a business degree from Slippery Rock University.[10] R. at 201. In 1987, she started to work as a financial consultant for Salomon Smith Barney, Inc. ("Smith Barney"). R. at 139. In that capacity, Schwarzwaelder managed assets totaling roughly $500,000,000.00. R. at 44. At some point, Smith Barney became engulfed in a series of legal disputes. R. at 46-47. Schwarzwaelder was contacted by New York Attorney General Eliot Spitzer, who asked her to testify for the State of New York. R. at 47-48. She agreed to testify and provided the Attorney General's Office with access to her emails. R. at 48. According to

---

removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).

[8] The regulations recognize that "younger persons" between the ages of forty-five and forty-nine are more limited in their ability to adjust to other work than are persons who have not yet attained the age of forty-five. 20 C.F.R. § 404.1563(c).

[9] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

[10] The university is formally known as Slippery Rock University of Pennsylvania of the State System of Higher Education. 24 PA. STAT. § 20-2002-A(b).

Schwarzwaelder, her superiors and co-workers at Smith Barney subsequently engaged in a series of retaliatory actions designed to undermine the credibility of her testimony. R. at 47-49. The situation apparently had a detrimental impact on her family. R. at 49. In November 2002, Schwarzwaelder left Smith Barney and started to work as a financial consultant for Merrill Lynch, Fenner & Smith, Inc. ("Merrill Lynch"). R. at 50.

In an effort to cope with the situation involving Smith Barney, Schwarzwaelder sought psychiatric treatment from Dr. Debrin Goubert. R. at 51. Although Schwarzwaelder was making in excess of $1,000,000.00 per year, she needed to work at least sixty hours per week in order to remain effective. R. at 215. Dr. Goubert became concerned that the demanding work environment at Merrill Lynch was exacerbating Schwarzwaelder's mental condition and would ultimately "put her emotional well-being permanently at risk." R. at 215. Acting on the advice of Dr. Goubert, Schwarzwaelder took a leave of absence from her duties at Merrill Lynch in November 2003. R. at 51. She never went back to work. R. at 51. Dr. Goubert provided Schwarzwaelder with prescriptions for Zoloft, Xanax, Remeron, Wellbutrin and Lexapro. R. at 216.

Schwarzwaelder applied for long-term disability benefits under a Merrill Lynch plan administered by Metropolitan Life Insurance Co. ("MetLife"). *Schwarzwaelder v. Merrill Lynch & Co., Inc.*, 606 F.Supp.2d 546, 548 (W.D.Pa. 2009). Under the plan, an employee who could not perform all of his or her "regular duties" at Merrill Lynch, and who was "under the continuous care" of a medical professional, was entitled to benefits for a period not to exceed twenty-four months. *Id.* Schwarzwaelder underwent a series of evaluations to facilitate a determination as to whether she was entitled to long-term disability benefits.

Dr. Michael D. Franzen, the Chief of Psychology and Neuropsychology at Allegheny General Hospital, performed a neuropsychological evaluation of Schwarzwaelder on May 27, 2004. R. at 200-203. After completing the evaluation, Dr. Franzen reported that Schwarzwaelder was "markedly limited in her ability to perform complex cognitive operations." R. at 203. He explained that her "cognitive status [wa]s significantly compromised by her emotional state." R. at 203. Dr. Franzen further opined that Schwarzwaelder's "psychological stress" would "significantly interfere with and limit her ability to perform at the high level of functioning" necessary to fulfill her responsibilities at Merrill Lynch. R. at 203. Dr. James R. Merikangas, a clinical professor of psychiatry and behavioral neuroscience at George Washington University's School of Medicine, expressed agreement with Dr. Franzen's conclusions in a letter dated December 1, 2004. R. at 220-221.

MetLife denied Schwarzwaelder's application for long-term disability benefits on June 8, 2007.[11] R. at 214. Dr. Goubert responded to the denial by describing Schwarzwaelder's condition in a letter to Sandi Day ("Day"), who worked as a senior case management specialist for MetLife. R. at 214-217. In her letter, which was dated August 13, 2007, Dr. Goubert expressed the view that Schwarzwaelder had not been capable of performing "each and every one of her regular job duties from May 3, 2004, through May 3, 2006." R. at 214. Dr. Goubert explained that, during the relevant period of time, it had been necessary for Schwarzwaelder to avoid "the demands of her many regular job duties" in order for her medications to have their "desired effect." R. at 216. In her letter, Dr. Goubert went on to state as follows:

> In reviewing the numerous job duties identified by MetLife, and in discussing in detail these duties with Ms. Schwarzwaelder, it is evident to me that Ms. Schwarzwaelder was expected to perform not just one or some of these duties, but

---

[11] The denial of Schwarzwaelder's application followed a remand order entered by this Court in an action brought pursuant to the Employee Retirement Income Security Act of 1974 [29 U.S.C. § 1001 *et seq.*]. *Schwarzwaelder v. Merrill Lynch & Co., Inc.*, 606 F.Supp.2d 546, 553-555 (W.D.Pa. 2009).

9

> each and every one of these duties, at a very high level or she would have failed. She not only had to take care of existing clients but had to prospect new clients with new products. She was subjected to frequent criticism of her work not only by her clients but by management. She was also subjected not only to the threat of legal action against her but to actual legal action against her, because of her job. She not only had to perform all of her individual job duties, but also had to manage a staff of about five other professionals. Based on my observation, these duties as a whole were literally destroying Ms. Schwarzwaelder's mental health. I have had many patients over the years in similar situations. Psychiatrists refer to this as major depressive disorder; in lay terms it is called burn-out. That is what happened to Ms. Schwarzwaelder.

R. at 216. According to Dr. Goubert, Schwarzwaelder had found herself in a situation in which "she either had to give up her job and income or face potentially life-threatening consequences." R. at 215.

MetLife referred Schwarzwaelder's case file to Dr. Reginald A. Givens, a psychiatrist, so that he could evaluate her entitlement to benefits. R. at 229. After reviewing the documentary evidence, Dr. Givens reported that Schwarzwaelder had failed to present objective evidence of functional limitations extending beyond April 6, 2004. R. at 230. He further opined that Schwarzwaelder had presented "insufficient objective evidence" to establish that her prescribed medications "posed a safety risk," caused "adverse side effects," or resulted in "cognitive impairments." R. at 231.

Dr. Merikangas evaluated Schwarzwaelder on July 23, 2007. R. at 222. In a letter to Day discussing the findings of his examination, Dr. Merikangas made the following observations:

> In terms of Ms. Schwarzwaelder's ability to perform the specific job duties identified in the MetLife letter of June 8, 2007, I must note in particular that a person with Schwarzwaelder's level of impairment could not have performed at the high level required by her employer (Merrill Lynch) in managing a portfolio in the hundreds of millions of dollars, or in the business development activities required to generate new business or maintain her existing clients. These job duties, much like the job duties of a surgeon or chief executive of a corporation,

> require the highest level of mental acuity, stamina and emotional stability. Ms. Schwarzwaelder lacked these necessary qualities. Given the very demanding nature of her job duties and the combined demands made by these many duties it would not have taken much in the way of impairment for Schwarzwaelder to be considered disabled under MetLife's standards.

R. at 223. Dr. Merikangas concluded his letter by stating that Schwarzwaelder had been incapable of performing her duties at Merrill Lynch between November 2003 and May 2006.[12] R. at 223-224.

On January 18, 2008, MetLife reconfirmed its earlier decision denying Schwarzwaelder's application for long-term disability benefits. *Schwarzwaelder*, 606 F.Supp.2d at 556. Schwarzwaelder responded on March 3, 2008, by challenging MetLife's decision in an action arising under the Employee Retirement Income Security Act of 1974 ("ERISA") [29 U.S.C. § 1001 *et seq.*].[13] *Id.* In a memorandum opinion and order dated March 9, 2009, this Court awarded long-term disability benefits to Schwarzwaelder for the two-year period commencing on May 3, 2004. *Id.* at 571.

On May 4, 2009, Dr. T. David Newman performed a consultative psychological evaluation of Schwarzwaelder in connection with her application for disability insurance benefits. R. at 241-245. After completing the evaluation, Dr. Newman reported that Schwarzwaelder would experience anxiety if she were to be placed in a work environment requiring her to perform at the level that she had previously performed at Smith Barney and Merrill Lynch. R. at 243. For this reason, he indicated that she had "moderate" to "marked" limitations in her abilities to respond appropriately to work pressures in a usual work setting and

---
[12] Although Dr. Merikangas evaluated Schwarzwaelder on July 23, 2007, his letter to Day was dated October 17, 2007. R. at 222.
[13] Schwarzwaelder challenged MetLife's decision by filing an amended complaint in her earlier action, which had been reopened in January 2008. *Schwarzwaelder v. Merrill Lynch & Co., Inc.*, 606 F.Supp.2d 546, 556 (W.D.Pa. 2009).

interact appropriately with supervisors and co-workers. R. at 244. Schwarzwaelder's abilities to understand, remember and carry out detailed instructions were deemed to be only "moderately" limited. R. at 243. Dr. Newman found no limitations concerning Schwarzwaelder's abilities to understand, remember and carry out short, simple instructions, make simple work-related decisions, interact appropriately with members of the general public, and respond appropriately to changes in a routine work setting. R. at 243-244.

Dr. Richard A. Heil, a non-examining psychological consultant, opined on May 8, 2009, that Schwarzwaelder was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment." R. at 249. In the narrative portion of his consultative report, Dr. Heil stated as follows:

> The claimant can perform work in a stable environment. She can understand, retain, and follow job instructions. She is able to maintain concentration and attention for extended periods. She would be able to maintain regular attendance and be punctual. Moreover, she is able to maintain socially appropriate behavior and can perform the personal care functions needed to maintain an acceptable level of personal hygiene. She is capable of asking simple questions and accepting instruction. Additionally, she is self-sufficient. She would be able to make simple decisions. In addition, she can sustain an ordinary routine and adapt to routine changes without special supervision. Although she evidences some limitation in dealing with work stresses, she remains capable of understanding and remembering instructions, concentrating, interacting with others, and adapting to changes in the workplace.

R. at 248. The assessments provided by Dr. Newman and Dr. Heil caused the Bureau to deny Schwarzwaelder's application for benefits. R. at 69.

At the hearing, Schwarzwaelder testified that she had stopped working at Merrill Lynch in order to avoid a "nervous breakdown." R. at 51. When questioned about her condition in the aftermath of her departure, Schwarzwaelder complained of sleeping difficulties and an inability to read for more than forty-five minutes at a time. R. at 53. Nevertheless, she acknowledged

that her emotional symptoms had improved because she was no longer working in a demanding environment. R. at 58. Schwarzwaelder explained that she needed to take Ambien in order to sleep. R. at 58. She testified that, with that medication, she could typically sleep in excess of six hours per night. R. at 59. The prescription for Ambien was provided by an endocrinologist to control a "thyroid condition." R. at 59. Although Schwarzwaelder asserted that her thyroid was "overactive," she denied that it had an impact on her ability to work. R. at 60-61.

The ALJ accorded "some weight" to the opinions supplied by Dr. Goubert, Dr. Franzen and Dr. Merikangas. R. at 28-29. Those opinions, of course, established only that Schwarzwaelder could not return to her prior position as a financial consultant. R. at 200-203, 214-224. The assessments provided by Dr. Newman and Dr. Heil were afforded "great weight" in the ALJ's decision. R. at 28-30. Schwarzwaelder's testimony at the hearing was deemed to be only partially credible. R. at 26.

The presence or absence of a "disability" depends as much on how that term is defined as it does on a particular individual's personal characteristics. *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 801-807, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999). The previous decision awarding long-term disability benefits to Schwarzwaelder was firmly grounded in the difference between the standard applicable under the relevant plan and the standard applicable under the Act. *Schwarzwaelder*, 606 F.Supp.2d at 567-568. In order to establish her entitlement to benefits under the plan, Schwarzwaelder only needed to demonstrate that she could not perform the duties of her previous position at Merrill Lynch. *Id.* at 548. The Act's standard of disability is much more demanding. In order to secure disability insurance benefits under Title II, Schwarzwaelder must demonstrate that she cannot "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). At the fourth

13

step of the sequential evaluation process, the ALJ concluded that Schwarzwaelder could not return to her past relevant work as a financial consultant. R. at 30. This Court's prior decision awarding long-term disability benefits to Schwarzwaelder went no further. *Schwarzwaelder*, 606 F.Supp.2d at 567-570. To the extent that Schwarzwaelder believes that an inconsistency exists between the earlier decision in her ERISA case and the Commissioner's decision in this case, she is mistaken. ECF No. 25 at 3-4.

The Commissioner bears the burden of production at the fifth step of the sequential evaluation process.[14] *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Seizing on that principle, Schwarzwaelder attempts to undermine the ALJ's residual functional capacity assessment. ECF No. 25 at 4-8. Schwarzwaelder's argument, however, is based on a fundamental misunderstanding of the Commissioner's burden. A claimant's residual functional capacity is only determined once. *Her v. Commissioner of Social Security*, 203 F.3d 388, 391-392 (6th Cir. 1999). The *same* residual functional capacity assessment is utilized at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1545(a)(5)(i)-(ii). The Commissioner's burden of production relates only to the existence of jobs in the national economy that could be performed by an individual with the claimant's established abilities and limitations. *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). It has nothing to do with the claimant's medical condition. *Her*, 203 F.3d at 391-392.

The record is totally devoid of evidence suggesting that Schwarzwaelder's impairments rendered her incapable of performing the duties of the jobs identified by Dr. Reed. As of April 13, 2009, Dr. Goubert was unable to say whether Schwarzwaelder could perform the duties of

---

[14] The term "burden of proof" is frequently used to refer to both the "burden of production" and the "burden of persuasion." *Schaffer v. Weast*, 546 U.S. 49, 56, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005). Since the Commissioner acts as the finder of fact in determining whether a claimant is entitled to benefits, her burden at the fifth step of the sequential evaluation process can only be characterized as a "burden of production." *Lukaszewicz v. Astrue*, Civil Action No. 10-1185, 2011 WL 2441732, at *6-7, 2011 U.S. Dist. LEXIS 72942, at *14-20 (W.D.Pa. May 27, 2011).

jobs that did not involve the stressful activities associated with her positions at Smith Barney and Merrill Lynch. R. at 145. No medical professional has asserted that Schwarzwaelder was completely incapable of working during the relevant period of time. As the individual claiming an entitlement to benefits, Schwarzwaelder was in the best position to provide information about her own medical condition. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). The burden was on her to present evidence establishing the existence of functional limitations that would preclude the performance of the jobs described in Dr. Reed's testimony. *Baker v. Astrue*, 617 F.Supp.2d 498, 510 (E.D.Ky. 2008). The probative force of any medical opinion must be judged in relation to the evidentiary record as a whole. *Miller v. Commissioner of Social Security*, 172 F.3d 303, 304 (3d Cir. 1999). Since the opinions provided by Dr. Newman and Dr. Heil were not contradicted by assessments submitted by Schwarzwaelder's treating sources, the ALJ was obviously entitled to give them significant weight. *Brown v. Astrue*, 649 F.3d 193, 196-197 (3d Cir. 2011)(recognizing the Commissioner's prerogative to credit assessments supplied by medical consultants even when they are contradicted by opinions expressed by treating healthcare providers).

The ALJ accommodated the "moderate" to "marked" limitations identified by Dr. Newman by restricting Schwarzwaelder to a range of "low-stress work" involving only occasional interaction with supervisors and co-workers. R. at 25, 244. Although Dr. Newman found Schwarzwaelder to be only "moderately" limited in her abilities to understand, remember and carry out *detailed* instructions, the ALJ went further by restricting Schwarzwaelder to the performance of "simple, routine, repetitive tasks." R. at 25, 243. Furthermore, the ALJ limited Schwarzwaelder to jobs involving only occasional workplace changes and public interaction even though Dr. Newman had identified no limitations in those areas. R. at 25, 243-244. None

of the limitations identified by Dr. Heil would preclude the performance of jobs falling within the ALJ's residual functional capacity assessment. R. at 25, 246-249.

In response to questions posed by Schwarzwaelder's counsel and the ALJ, Dr. Reed testified that no work existed in the national economy for an individual who would be unable to concentrate for fifteen minutes out of every hour. R. at 64-65. Schwarzwaelder contends that the ALJ erred in dismissing this portion of Dr. Reed's testimony. ECF No. 16 at 9-10. There are three problems with Schwarzwaelder's argument. First of all, she never testified that she could concentrate for only forty-five minutes per hour. Instead, Schwarzwaelder merely stated that she could not *read* for more than forty-five minutes at a time. R. at 53. Second, the ALJ was only required to give Schwarzwaelder's testimony serious consideration. *Mason v. Shalala*, 994 F.2d 1058, 1067-1068 (3d Cir. 1993). He was not required to credit it in every respect. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 363 (3d Cir. 2011). Finally, the *hypothetical* question describing a "disabled" individual was not based on the ALJ's assessment of Schwarzwaelder's actual abilities and limitations. The ALJ posed that question only to clarify the meaning of ambiguous questions that had previously been asked by Schwarzwaelder's counsel. R. at 64-65. The ultimate residual functional capacity assessment did not have to incorporate every functional limitation *alleged* by Schwarzwaelder. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Since the portion of Dr. Reed's testimony relied upon by Schwarzwaelder was not based on a description of *her* abilities and limitations, it did not preclude a determination that jobs consistent with *her* residual functional capacity existed in the national economy. *Craigie v. Bowen*, 835 F.2d 56, 57-58 (3d Cir. 1987).

A vocational expert's testimony cannot be relied upon to establish the existence of jobs in the national economy consistent with a claimant's residual functional capacity unless the

question eliciting that testimony makes reference to all of the claimant's functional limitations. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). Where a credibly established limitation is not described, there is a danger that the vocational expert will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). In this case, however, every limitation contained within the ALJ's residual functional capacity finding was conveyed to Dr. Reed at the hearing. R. at 25, 62. Given that Dr. Reed's testimony was given in response to a question accurately describing Schwarzwaelder's limitations, it satisfied the Commissioner's burden of production at the fifth step of the sequential evaluation process. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 206 (3d Cir. 2008).

As noted earlier, Schwarzwaelder became a "[p]erson closely approaching advanced age" on July 7, 2008, when she reached the age of fifty. 20 C.F.R. § 404.1563(d). More than two years elapsed between that date and the date of the ALJ's decision. R. at 18-31. Although the ALJ mentioned that Schwarzwaelder had been a "younger person" on her alleged onset date, he did not specifically discuss the importance of her age in his decision. R. at 30. Schwarzwaelder suggests that this omission may have been dispositive. ECF No. 25 at 8-9. She vaguely bases her suspicion on the Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2. *Id.* Under § 204.00 of the Guidelines, a claimant who is capable of performing "heavy"[15] or "very heavy"[16] work is generally deemed to be capable of performing jobs existing in the national economy regardless of his or her age. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 204.00. Schwarzwaelder had no physical limitations. R. at 25. The ALJ specifically relied on

---

[15] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. §§ 404.1567(d), 416.967(d).
[16] "Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." 20 C.F.R. §§ 404.1567(e), 416.967(e).

17

§ 204.00 in determining that Schwarzwaelder was not disabled. R. at 30-31. He apparently declined to discuss Schwarzwaelder's age because it had no direct bearing on her entitlement to benefits. In any event, Schwarzwaelder cannot obtain a remand by pointing to an error or omission that had no impact on the outcome of her case. *Rutherford*, 399 F.3d at 553. Under the present circumstances, the ALJ's failure to discuss Schwarzwaelder's age provides the Court with no logical basis for setting his decision aside.

**111.** **Conclusion**

Although the record establishes that Schwarzwaelder could not have returned to her stressful work as a financial consultant between her alleged onset date and the date of the ALJ's decision, it contains no evidence suggesting that she was precluded from performing the duties of the "unskilled" jobs described in Dr. Reed's testimony.[17] R. at 62-63. Accordingly, the Commissioner's decision denying Schwarzwaelder's application for disability insurance benefits is "supported by substantial evidence." 42 U.S.C. § 405(g). It is respectfully recommended that Schwarzwaelder's motion for summary judgment (*ECF Nos. 11 & 15*) be denied, and that the Commissioner's motion for summary judgment (*ECF No. 21*) be granted. It is further recommended that the "final decision" of the Commissioner be affirmed. In accordance with 28 U.S.C. § 636(b)(1), the parties have fourteen days to file written objections to this report and recommendation. A party's failure to file written objections will seriously impair her ability to challenge this Court's legal conclusions on appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193, n. 7 (3d Cir. 2011).

Date: June 10, 2013

_____
LISA PUPO LENIHAN

---

[17] Since Schwarzwaelder was insured for Title II benefits through December 31, 2010, she remains free to file a new application for the period of time beginning on October 14, 2010. R. at 23, 125.

United States Magistrate Judge

cc: All counsel of record